IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| James Boozer,  )  <br> ) | Civil Action No. 2:14-cv-03312-DCN-JDA |
| Plaintiff,  )  <br> ) | |
| v.  )  <br> ) | **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |
| MCAS Beaufort,  )  <br> *d/b/a CPM Federal Credit Union*,  )  <br> ) | |
| Defendant.  ) | |

This matter is before the Court on Defendant's motion for judgment on the pleadings as to Plaintiff's fourth cause of action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [Doc. 16.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed a Complaint on August 15, 2014, alleging claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), a violation of the Fair Labor Standards Act ("FLSA"), a violation of the South Carolina Payment of Wages Act, wrongful termination in violation of public policy, breach of contract, and detrimental reliance/promissory estoppel. [Doc. 1.] Defendant answered on November 20, 2014, [Doc. 5] and on December 3, 2014, moved to dismiss with prejudice Plaintiff's fourth cause of action—wrongful termination in violation of public policy [Doc. 16]. Plaintiff filed a response in opposition to the motion on January 16, 2015 [Doc. 10], and Defendant filed a reply on January 20, 2015 [Doc. 19]. Accordingly, the motion is now ripe for review.

**BACKGROUND**[1]

Plaintiff alleges that he worked for Defendant as a Business and Communications Liaison from approximately December 2010 until March 2013. [Doc. 1 ¶ 5.] Plaintiff contends that he was 61 years old "at the time of his employment with the Defendant[]." [*Id.* ¶ 15.] Plaintiff asserts he entered into an employment contract with Defendant that provided Plaintiff would receive a base salary of $111,787.20; medical and 401K benefits; reimbursement of all reasonable expenses incurred in the performance of his job duties; a membership to Fripp Island; a maximum of 38 days in non-cumulative PTO in any calendar year; payment of all educational conferences deemed necessary by the CEO/President of the company; a company automobile that could be used for company and personal needs and that the company would pay for the associated cost, upkeep, and fuel; and the same or similar fringe benefits made available by Defendant to all of its other employees. [*Id.* ¶¶ 7–14.]

Plaintiff alleges that on December 3, 2013, Defendant relieved CEO/President George Lockwood from his position, and Jane Dobbs was named the acting CEO/President. [*Id.* ¶¶ 17–18.] Thereafter, Plaintiff contends Defendant asked Plaintiff to return his company credit card. [*Id.* ¶ 19.] Plaintiff maintains that he returned the company credit card and was forced to pay gas and company expenses without reimbursement from Defendant. [*Id.*] Plaintiff asserts that in March 2013, Defendant

---

[1] The Court has considered the Complaint and the Answer in composing the background. The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is "that on a 12(c) motion, the court is to consider the answer as well as the complaint." *Fitchett v. Cnty. of Horry, S.C.*, C/A No. 4:10–cv–1648–TLW–TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (quoting *Cont'l Cleaning Serv.*, 1999 WL 1939249, at *1); *see also A.S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964).

reduced Plaintiff's salary to $75,000 and also failed to pay Plaintiff's membership to Fripp Island and began training a younger woman with no business experience to take Plaintiff's place.  [*Id.* ¶¶ 20–22.]  Plaintiff alleges that Defendant began to get rid of its older employees by pushing them into retirement or asking them to leave.  [*Id.* ¶ 23.]  Plaintiff asserts that when he complained to Defendant that his pay was cut in violation of the employment agreement, he was told that the Board never ratified the contract and, therefore, Defendant could do whatever it wanted.  [*Id.* ¶ 24.]  Plaintiff further asserts that after he complained, Defendant began to retaliate against Plaintiff.  [*Id.* ¶ 25.]  Plaintiff contends his employment was terminated on March 31, 2013.  [*Id.* ¶ 26.]

## APPLICABLE LAW

Federal Rules of Civil Procedure Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Courts follow a fairly restrictive standard in ruling on Rule 12(c) motions, as hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense."  *Pellegrin v. Berthelson*, C/A No. 9:11-cv-00125-DCN, 2012 WL 10847, at *1 (D.S.C. Jan. 3, 2012) (internal quotation marks and citation omitted).  A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts."  *Herbert Abstract Co., Inc., v. Touchstone Props., Ltd*., 914 F.2d 74, 76 (5th Cir. 1990).  A "motion for judgment on the pleadings is decided under the same

standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010). "When considering a motion for judgment on the pleadings, the court may consider the pleadings, exhibits attached thereto, documents referred to in the complaint that are central to the plaintiff's claims, and other materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *In re MI Windows & Doors, Inc. Prods. Liab. Litig., MDL No. 2333*, Nos. 2:12-mn-00001, 2:12-cv-02269-DCN, 2013 WL 3207423, at *2 (D.S.C. June 24, 2013) (internal quotation marks and citations omitted); *cf. Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record. We may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (internal quotation marks and citations omitted)).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule

12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

5

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

Plaintiff alleges his employment was terminated in violation of "a clear mandate of public policy of the State of South Carolina" and that the "conduct of the Defendant, its agents and servants, violates South Carolina and United States laws against retaliatory dismissal and was, in fact, retaliatory in nature." [Doc. 1 ¶¶ 52, 53.] Defendant contends Plaintiff's wrongful termination in violation of public policy claim should be dismissed because Plaintiff has a statutory remedy available under the FLSA.[2]  [Doc. 16 at 3–4.]

---

[2]Defendant also argues that Plaintiff has a statutory remedy available under the ADEA; however, the Court finds that Plaintiff alleges he was retaliated against because of his *age* in violation of the ADEA. In his fourth cause of action, Plaintiff alleges he was retaliated against because he refused to allow the Defendant's "improper and illegal practice" of failing to pay wages. [Doc. 1 ¶ 51.] Plaintiff uses similar language in his claims under the FLSA. Accordingly, the Court will address Plaintiff's available statutory remedies

6

For the reasons explained below, the Court recommends that Defendant's motion be granted.

In South Carolina, an at-will employee may be terminated for any reason or no reason at all. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 214 (S.C. 1985). Under the "public policy exception" to the at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination "[w]here the retaliatory discharge of [the] at-will employee constitutes violation of a clear mandate of public policy." *Id.* at 216. "The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011) (citing *Ludwick*, 337 S.E.2d at 216; *Culler v. Blue Ridge Elec. Co-op., Inc.*, 422 S.E.2d 91 (S.C. 1992)). However, the public policy exception is not limited to these situations. *Id.*; *see Garner v. Morrison Knudsen Corp.*, 456 S.E.2d 907, 910 (S.C. 1995) ("While we have applied the public policy exception to situations where an employer requires an employee to violate a criminal law, and situations where the reason for the employee's termination was itself a violation of the criminal law, we have never held the exception is *limited* to these situations." (emphasis in original)); *Keiger v. Citgo, Coastal Petroleum, Inc.*, 482 S.E.2d 792 (S.C. Ct. App. 1997) (holding that "whether an employer's retaliatory discharge of an employee who threatens to invoke her rights under the Payment of Wages Act is a violation of a clear mandate of public policy" was a novel issue and, thus, the plaintiff's case should not have been dismissed for failure to state a claim).

---

under the FLSA, but not the ADEA.

7

A common law claim for termination in violation of public policy is only available when there is no corresponding statutory remedy. *Barron*, 713 S.E.2d at 637. For example, the Supreme Court of South Carolina held an employee could not maintain an action for termination in violation of public policy where the employee alleged he was terminated for filing a complaint under the FLSA because the FLSA provided a remedy for wrongful discharge. *Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (S.C. 1992). In contrast, the court agreed with the South Carolina Court of Appeals that the South Carolina Payment of Wages Act would not prohibit an employee from maintaining a termination in violation of public policy claim because that act did not provide a remedy for wrongful termination. *Barron*, 713 S.E.2d at 638 (discussing *Evans v. Taylor Made Sandwich Co.*, 522 S.E.2d 350 (S.C. Ct. App. 1999)).

Under the FLSA, a successful plaintiff is entitled to legal and equitable relief, including reinstatement, promotion, and the payment of wages lost and the an additional equal amount in liquidated damages. 29 U.S.C. § 216. Accordingly, here, Plaintiff has an available statutory remedy under the FLSA for his claim of wrongful termination and is not entitled to bring a wrongful discharge in violation of public policy claim.[3] *See Dockins*, 413

---

[3]Plaintiff relies on the Supreme Court of South Carolina's holding in *Barron* that because a plaintiff does not have an available statutory remedy under the South Carolina Payment of Wages Act ("SC Wages Act"), a plaintiff can assert a claim for wrongful termination in violation of public policy. [Doc. 17 at 3.] The Plaintiff in *Barron* brought claims alleging violations of the SC Wages Act, breach of contract, breach of contract accompanied by fraudulent act, and wrongful termination in violation of public policy. *Barron*, 713 S.E.2d at 634. The Supreme Court of South Carolina held that a plaintiff could bring a wrongful termination in violation of public policy claim because the SC Wages Act did not "provide a statutory remedy whereby an employee may recover damages for wrongful termination." *Id*. at 638. Here, however, Plaintiff brought claims under the SC Wages Act and the FLSA. As the Court has previously discussed, the FLSA does provide a statutory remedy for wrongful termination. *See* 29 U.S.C. § 216. Accordingly, it is

S.E.2d at 18, 19 (holding that the FLSA "provides for civil penalties for violations" and, as a result, a plaintiff is "limited to that statutory remedy").  Therefore, dismissal is appropriate with respect to Plaintiff's fourth cause of action.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for judgment on the pleadings as to Plaintiff's fourth cause of action be GRANTED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin<br>
United States Magistrate Judge

March 9, 2015  
Greenville, South Carolina

---

appropriate to dismiss Plaintiff's fourth cause of action for wrongful termination in violation of public policy under the Supreme Court of South Carolina's analysis in *Dockins*.